AMERICAN CENTRAL INSURANCE COMPANY v. HOPE NUNN.

No. 1350.   Decided October 31, 1904.

**Insurance—Waiver.**

    An insurance company did not waive its defense under the "iron safe clause," by reason of the failure of insured to keep and produce books, by requiring him to submit to an examination concerning the loss, where the policy provided that he should do so when required and that the insurer should not be held to have waived any condition of the policy thereby. (Pp. 193, 196.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Hopkins County.

The insurance company, having prosecuted error from a judgment recovered against it by Nunn on a policy of insurance, on affirmance obtained writ of error from the Supreme Court.

*Carden, Senter & Carden,* for plaintiff in error.—It was error to instruct the jury that if the adjuster proceeded with the investigation "to ascertain the amount of plaintiff's loss" after learning of the facts relating to plaintiff's noncompliance with the iron safe clause, and plaintiff was subjected to labor, trouble and expense in the course of the investigation, they would find for plaintiff upon the claim for loss upon stock, because the adjuster had a right to make such investigation under

the terms and provisions of the contract of insurance after learning of said facts and said charge was an invasion of defendant's rights and privileges under the express terms of the policy, which provided that the insured should submit to examination under oath by any person named by the company and, as often as required, produce for examination all of the books, accounts, invoices, etc., of the insured, and that the insurer shall not be held to have waived any provision or condition of the policy, or any forfeiture thereof by any act or proceeding on its part relating to such examination. Am. Cent. Ins. Co. v. Bass, 90 Texas, 382; City Drug Store v. Scottish U. N. Ins. Co., 44 S. W. Rep., 21; Roberts, Willis & Taylor Co. v. Sun Mut. Ins. Co., 48 S. W. Rep., 559; Curlee v. Texas H. Mut. Ins. Co., 73 S. W. Rep., 831; Insurance Co. v. Grand View Building Assn., 138 U. S., 307; Scottish U. & N. Ins. Co. v. Clancy, 83 Texas, 115; Phoenix Assurance Co. v. Munger I. C. M. Mfg. Co., 92 Texas, 303.

*V. M. Clark, L. L. Wood,* and *Templeton, Crosby & Dinsmore,* for defendant in error.—The evidence was sufficient to establish a waiver of the defendant's right to claim a forfeiture of the policy by reason of the failure to comply with the iron safe clause, and to warrant the charge complained of. Georgia Home Ins. Co. v. Oneal, 14 Texas Civ. App., 519; Georgia Home Ins. Co. v. Moriarity, 37 S. W. Rep., 628; Phoenix Assurance Co. v. Cotton Co., 49 S. W. Rep., 271; Cohen v. Ins. Co., 67 Texas, 325; Morrison v. Ins. Co. of N. Am., 69 Texas, 353, 71 Texas, 149; Enos v. St. Paul F. & M. Ins. Co., 46 Am. St. Rep., 796; Brown v. State Ins. Co., 7 Am., St. Rep., 495.

BROWN, Associate Justice.—Nunn instituted this suit in the District Court of Hopkins County to recover of the insurance company the amount of a policy issued to him, whereby it insured against fire "his stock of liquors and other saloon merchandise for $2000" and "his bar fixtures and furniture for $1000," all of which were situated in a building in Paris, Texas, and were totally destroyed by fire on the night of January 7, 1902. The policy contained the usual iron safe clause in which, among other things, it was required of the insured to keep a set of books which "should show a complete record of all business transacted, including purchases and sales, both for cash and credit," and that "such books should be kept securely locked in a fire proof safe at night and at all times when the building occupied was not actually opened for business;" that in case of loss or nonproduction of such a book for examination by the insurance company, the policy should be void. The insurance company pleaded a general denial and specially the conditions of the iron safe clause, alleging the breach thereof by the failure of the plaintiff to keep and produce the books required.

The plaintiff replied that the defendant, after receiving full knowledge and information concerning the loss of the books and that the assured would not be able to produce the same, caused him to incur

expense and be at trouble in complying with the demand for the examination of him under oath touching the said fire and the facts concerning it, whereby the insurance company waived the forfeiture of the policy. The insurance company pleaded the following provision of the policy: "The insured shall as often as required exhibit to any person designated by this company all that remains of any property herein described, and submit to examination under oath by any person named by this company, and subscribe the same; and, as often as required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof, if original be lost, at such reasonable place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made. * * * This company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof, by any requirement, act or proceeding on its part relating to the appraisal or to any examination herein provided for. * * * This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be indorsed hereon or added hereto."

The trial judge instructed the jury as follows: "The testimony shows that the plaintiff is entitled to recover the actual cash value of the bar fixtures and furniture, etc., covered by the said policy not to exceed $1000, and you will so find for the plaintiff, but as to the item of $2000, on plaintiff's liquors, wines, beer, cigars, etc., the plaintiff has failed to comply with the provisions of the iron safe clause of said policy and can not recover for same, unless you further believe the defendant after the fire waived the provisions of the iron safe clause." The jury returned a verdict in favor of the plaintiff for the sum of $1000 for bar fixtures and furniture, and $2000 for wines, whiskies and cigars, etc.

The undisputed evidence in this case showed a forfeiture under the iron safe clause of the policy and no contention is made to the contrary in this court. About one week after the fire, Nunn informed Ball & Dixon, agents at Paris, Texas, who issued the policy, that his bill book and blotter had been burned in the fire. J. R. Cravens was adjuster for the insurance company with authority from them to adjust this claim, and at the instance of the company went to Paris to investigate and adjust Nunn's loss. Cravens was informed before he met Nunn, by Ball & Dixon, that Nunn had told them his bill book and blotter were burned in the fire. On January 24 Nunn and Cravens met in Ball & Dixon's office at Paris for the purpose of adjusting the loss, and at their first meeting Nunn informed Cravens of the loss of his books. Nunn did not tell Cravens that he had such books as were required by the iron safe clause. Cravens called upon Nunn to produce the b⌐ and he produced only his ledger and some other books which ˮ comply with the iron safe clause, and Cravens so decided ⟨

98 Sup.—13.

and then examined all of the books which Nunn claimed to have. Before the adjuster examined Nunn under oath he did not claim a forfeiture of the policy, but caused Nunn to be sworn and examined him for four or five hours touching his business and loss. A brief statement of the matter drawn out by the examination was reduced to writing and . signed by Nunn, who was thereby compelled to remain away from home one night, and was put to some expense by reason of the examination. On the 30th of January, 1902, Cravens wrote to Nunn denying the company's liability on the policy and informing him that Ball & Dixon would return the premium paid; this letter was signed by the insurance company per Cravens.

The jury returned a verdict for the full amount of the policy and judgment was rendered in accordance with the verdict by the district court, which was affirmed by the Court of Civil Appeals.

The clause of the policy sued upon, which is copied in the statement made above to the effect that the assured should submit to examination by any person appointed by the insurer and that the insurance company should not be held to have waived any provision or condition, etc., was valid and binding upon the assured. The examination of Nunn by Cravens did not have the effect to waive the forfeiture incurred by the failure of Nunn to keep and produce such books as were required by the terms of the policy. Hill v. London Assurance Corp., 9 N. Y. Sup., 500; Walker v. Phoenix Ins. Co., 35 N. Y. Sup., 374; Oshkosh Match Works v. Manchester F. A. Co., 92 Wis., 510; Hayes v. U. S. Fire Ins. Co., 132 N. C., 702; City Drug Store v. Scottish Union and Nat. Ins. Co., 44 S. W. Rep., 21; American Cent. Ins. Co. v. Bass Bros., 90 Texas, 380.

The first five cases above cited are based upon facts almost identical with this case, and the decisions are clear, pointed and decisive of the question here presented. The case of Insurance Co. v. Bass Bros., above cited, is not upon similar facts, but the opinion is based upon the same doctrine and strongly supports the conclusion that we have reached. In that case there was in the policy a provision for the appraisement of the loss which the assured might claim to have sustained with the following stipulation in connection therewith: "Any proceeding relative to the appraisement shall not waive any of the conditions of the policy." The amount of the loss was ascertained by appraisement as provided by the policy, but the insurance company refused to pay the sum assessed because it claimed not to be liable for other reasons, and pleaded matters by which it sought to defeat the recovery on the policy and also pleaded the appraisement as a full adjustment of the amount the plaintiffs would be entitled to if they should recover. The Court of Civil Appeals submitted to this court the following question: "Did the denial of liability on part of the appellant after the amount of the loss had been ascertained by appraisement as provided in the policy have the effect of waiving its right to insist upon the appraisement as

conclusive of the amount of the loss, such appraisement being otherwise valid if not thus waived?" The question was answered in the negative, and Chief Justice Gaines used the following language: "The policy in question, as outlined in the statement of the Court of Civil Appeals, does not expressly provide that in the event an appraisement is demanded it shall be equivalent to an admission of liability, or if the liability be contested the appraisement shall go for naught. On the contrary, it provides first that 'the loss shall be ascertained by appraisement' without expressing any exception whatever, and then especially stipulates that 'any proceeding relative to the appraisement' should not waive any of the conditions of the policy.' From the latter provision we think it is to be inferred that the parties contemplated that there might be an appraisement binding upon the parties and at the same time a denial of liability on the ground of a breach of one or more of the conditions of the contract."

If, under the provision of the policy in the last named case, the denial of liability would not work a forfeiture of the right of the insurance company to limit the plaintiff's recovery to the amount found by the appraisers, then how can it be said that in this case, under a similar provision, an examination into the facts to ascertain whether the company was liable or not would have the effect to bar it of the right to defend itself by setting up the forfeiture which occurred under the terms of the policy? In each case the provision relied upon by the insurance company was a part of the contract and is as obligatory on the assured as the promise to pay was upon the company.

So far as the writer has been able to ascertain by a careful investigation, the courts have uniformly held a like agreement valid when made between the parties after the loss had occurred and before the examination was had. Sun Mutual Ins. Co. v. Dudley, 45 S. W. Rep., 539; Keet-Rountree Dry Goods Co. v. Mercantile Town Mut. Ins. Co., 74 S. W. Rep., 469. If such agreement is valid when made after the loss, we can not see any good reason why it should not be held equally valid and binding when embodied in the original contract.

There is no sound basis upon which to rest an estoppel in this case. Nunn had no right to believe that the company admitted the validity of his claim against it when Cravens entered upon the investigation of the facts to ascertain whether or not there was liability, for Nunn knew that his contract provided that such an examination should not be taken as an admission of his right to recover, and there was nothing in the facts that transpired at the time of the examination which were calculated to mislead him in any respect whatever.

The freedom of investigation which the insurance company secured by the provision in question was valuable to it and enabled this company to carefully investigate the facts of the loss and to ascertain, without fear of waiving any forfeiture, the truth as to whether the loss was one for which it was liable under its contract. However unwise

it may be considered on Nunn's part to have made such an agreement, he so contracted and he must be held bound by the terms of the agreement.

We have not been able to find and have not been cited by counsel for defendant in error to any case which sustains the decision of the Court of Civil Appeals, except the case of Phoenix Assurance Co. v. Monger Imp. E. M. M., 49 S. W. Rep., 271, decided by the Court of Civil Appeals of the Fifth District, in which it was held that under a similar provision the forfeiture which the assured had incurred was waived by an examination. This court granted a writ of error in that case upon the ground that the Court of Civil Appeals erred in so holding; but upon a decision of the case it was held that the stipulations for violation of which the insurance company claimed a forfeiture were not warranties and no forfeiture had in fact occurred, hence it was unnecessary to review the decision of the Court of Civil Appeals upon that question. Cases cited in which the stipulation against waiver did not exist in the contract are not authority upon this question.

Many questions are presented by the application for writ of error, but in our view of the case they become unimportant and will not be discussed.

The District Court and the Court of Civil Appeals erred in entering judgment in favor of Nunn against the insurance company for the value of the whiskies and other goods which were lost in the fire. It is therefore ordered that both judgments be reversed, and that judgment be here entered in favor of Hope Nunn against the plaintiff in error for the sum of $1000 with 6 per cent interest from the 6th day of February, 1903, and that Nunn recover of the said insurance company all costs of the District Court; and that said insurance Company recover of Nunn all costs of the Court of Civil Apeals and of this court.

*Reversed and rendered.*